**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| GREEN BEGINNINGS, LLC, | |
| *Plaintiffs,* | Case Number: |
| vs. | |
| WEST BEND MUTUAL INSURANCE COMPANY, | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

**CLASS ACTION COMPLAINT AND REQUEST FOR DECLARATORY RELIEF**

Plaintiff Green Beginnings, LLC, by and through undersigned counsel, brings this Class Action Complaint and Request for Declaratory Relief on behalf of itself and all others similarly situated as defined herein against the defendant West Bend Mutual Insurance Company, and in support thereof, states as follows:

**I.      INTRODUCTION**

This is a class action brought by Plaintiff Green Beginnings, LLC against Defendant West Bend Mutual Insurance Company, for declaratory judgment under an insurance Policy contract issued to Plaintiff by Defendant. The Policy at issue insures Plaintiff's property, business operations, and potential liabilities in connection with their business operations, and includes coverage for lost Business Income, Extra Expense coverage, coverage for losses due to the actions of a Civil Authority, and for losses covered under the Communicable Disease Business Income and Extra Expense coverage provision of the Policy.

Plaintiff is an early childhood and infant center in Chicago, Illinois serving children ages 6 weeks to 6 years old. Green Beginnings provides a safe, encouraging learning environment

1

fostering children's social/emotional, physical and cognitive development. However, this is now threatened because of the COVID-19 pandemic.

Plaintiff made premium payments expecting in its time of need, West Bend Mutual Insurance Company would make good on its contractual obligations under the Policy it wrote and issued. In March 2020, during the term of the Policy issued by West Bend Mutual Insurance Company, Plaintiff was forced to shut down its business due to the spread of COVID-19, a communicable disease, the COVID-19 pandemic, and in accordance with executive orders issued by Illinois Governor Pritzker effectively closing many businesses to the public, including Plaintiff's business. Businesses had to alter or shutter operations due to the orders from civil authority actors such as the Illinois Governor and Director of Public Health. As a result, many insureds filed insurance claims for coverage for loss of Business Income, Extra Expense coverage, and coverage for loss due to the actions of a Civil Authority.

Plaintiff is entitled to coverage under the Policy issued by Defendant because Plaintiff has suffered "direct physical loss of or damage" to its property. COVID-19 has impaired Plaintiffs' property, making it unusable. Indeed, Plaintiff is unable to fill the childcare centers with children and staff, both of whom have been diagnosed as COVID-19 positive impacting its operations. As a result, Plaintiff has been required to drastically reduce operations, and even to close entirely.

Upon information and belief, West Bend Mutual Insurance Company systematically denied and or claimed a reservation of rights refusing to pay on insurance claims brought by Plaintiff—and hundreds of other putative class members —for coverage for losses stemming from the COVID-19 pandemic. Defendant's decision not to provide coverage and/or its decision to reserve its rights and refuse to pay claims under the common policy form(s) issued to Plaintiff and the putative class members gives rise to Plaintiff's and the putative class members' right to seek

2

declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 establishing that they are entitled to receive the benefit of the insurance coverage it purchased and for indemnification of the business losses it has sustained.

## II.    PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Green Beginnings, LLC is a limited liability company organized under Illinois law with its principal place of business in Chicago, Illinois.  Green Beginnings, LLC is a single member LLC. The member is a citizen of Illinois.

2.      Defendant West Bend Mutual Insurance Company ("West Bend") is an insurance company organized under the laws of Wisconsin with its principal place of business in West Bend, Wisconsin engaged in the business of selling insurance contracts to commercial entities such as Plaintiff in Illinois and elsewhere.

3.      The Court has subject matter jurisdiction over this matter under 28 U.S.C. 1332(a), because this matter involves citizens of different states and the amount in controversy exceeds $75,000.

4.      The Court has subject matter jurisdiction over this matter under 28 U.S.C.1332(d)(2) and (6), as amended by the Class Action Fairness Act of 2005, because this matter was brought as a class action, the aggregate claims of the putative Class members exceed $5,000,000, exclusive of interest and costs, and at least one member of the putative Class is a citizen of a different state than West Bend.

## III.    FACTUAL SUMMARY

### A.  The Insurance Policy

5.      This action is brought by Plaintiff, individually and on behalf of all other similarly situated insureds, who suffered losses for which they made claims under the same and/or

3

substantially similar policy, but were denied their contractual rights under common policy forms due to Defendant's decision not to provide coverage for losses stemming from SARS-CoV-2 virus and or COVID-19, including lost Business Income, Extra Expense coverage, and coverage for loss due to the actions of a Civil Authority, including losses covered under the Communicable Disease Business Income and Extra Expense coverage provision of the Policy.

6.      At all times relevant, West Bend insured Plaintiff pursuant to an insurance Policy it drafted.

7.      Plaintiff did not participate in the drafting or negotiation of the words used in the Policy.

8.      Green Beginnings, LLC is insured pursuant to policy number 1885849 06. A copy of the policy is attached as Exhibit 1 (the "Policy")

9.      The Policy uses standard common forms that contain provisions at issue in this action.

10.     Plaintiff's Policy provides coverage for loss of lost Business Income, Extra Expense coverage, and coverage for loss due to the actions of a Civil Authority, amongst other additional coverages.

11.     Plaintiff's Policy also provides coverage for lost Business Income and Extra Expense losses sustained as a result of Plaintiff's "operations" being temporarily shut down or suspended by an order of a Civil Authority actor, including a local, state, or federal board of health or similar governmental board with jurisdiction over Plaintiff's business.

12.     Relevant portions of the Policy provide, subject to other Policy terms, that Defendant West Bend:

>      a. "We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of

restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss";

b. We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of such premises.

c. "If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that: **i.** Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and **ii.** Ends on the earlier of: **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or **(ii)** 180 consecutive days after the date determined in Paragraph **(i)** above";

c. "When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises provided that both of the following apply: **(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property"; and

d. "You may extend this insurance to apply to the actual loss of Business Income or Extra Expense that you sustain as the result of your "operations" being temporarily shut down or suspended as ordered by a local, state, or federal board of health or similar governmental board that has jurisdiction over your "operations". The shutdown or suspension must be due to an outbreak of a "communicable disease" or a "waterborne pathogen" at the insured premises as described in the Declarations. We will pay any loss of Business Income or any necessary Extra Expense costs (other than the expense to repair or replace property) you incur arising from the shutdown or suspension of your "operations".

5

13.     "Communicable disease" is defined within the Policy to "mean[] an illness, sickness, condition or an interruption or disorder of body functions, systems or organs that is transmissible by an infection or a contagion directly or indirectly through human contact or contact with human fluids, waste or similar agent..."

14.     "Water-borne pathogen" is defined within the Policy to "mean[] a bacteria, virus or other microorganism that may be transmitted to humans by contaminated water and can cause an illness, sickness, condition, or an interruption or disorder of body functions, systems or organs."

15.     The term "civil authority" is not defined in the Policy.

16.     The policy includes no reference to the word "pandemic."

17.     Upon information and belief, Defendant's language in the Policy regarding coverage for loss of Business Income, Extra Expense coverage, and coverage for loss due to the actions of a Civil Authority is present in every policy, including but not limited to the Policy issued by West Bend to Plaintiff, as well as to the putative class members as defined herein also providing coverage for loss of Business Income, Extra Expense coverage, and coverage for loss due to the actions of a Civil Authority.

18.     As typified by Plaintiff's experience, West Bend chose not to provide coverage for loss of Business Income, Extra Expense coverage, and coverage for loss due to the actions of a Civil Authority under claims tendered for losses due to SARS-CoV-2 at, in, on or around insureds' premises, losses due to the spread of SARS-CoV-2 and/or COVID-19 in the community (the "COVID-19 Pandemic"), or losses due to Civil Authority orders issued by the Governor of Illinois and the Illinois Department of Health addressing SARS-CoV-2 and the COVID-19 Pandemic.

19.     While the Policy was in force, Plaintiff sustained, and continues to sustain, losses due to the physical presence of SARS-CoV-2 particles at, in, on, and/or around Plaintiffs' premises described in the Policy, as well as in the community.

20.     While the Policy was in force, Plaintiff sustained, and continues to sustain, losses due to the physical presence of SARS-CoV-2 particles and the spread of COVID-19 in the community (the "Pandemic").

21.     While the Policy was in force, Plaintiff sustained, and continues to sustain, losses due to the civil authority orders issued by the Governor of Illinois and the Illinois Department of Health addressing the physical presence of and harm caused by SARS-CoV-2 particles, COVID-19 and the Pandemic.

**B. The Virus Exclusion**

22.     The Policy contains a coverage exclusion for viruses, which, in pertinent part, provides: "We will not pay for loss or damage caused directly or indirectly by… Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (the "Virus Exclusion").

23.     The Virus Exclusion does not preclude coverage for Plaintiff's claim under the Policy.

24.     To the extent that the governmental orders, in and of themselves, constitute direct physical loss of or damage to Plaintiff's Covered Property, and/or preclusion of access to the Covered Property because of a Civil Authority order related to damage to nearby properties, the Virus Exclusion simply does not apply.

25.     The insurance industry, through the Insurance Services Office, Inc. ("ISO"), an insurance industry trade organization that publishes coverage forms widely used in the industry,

and including Defendant, understood that the presence of a virus can cause physical loss and damage to property which would trigger coverage under the business income or Civil Authority coverage forms.

26.     Nevertheless, through the ISO, the industry represented to the Insurance Department that there was no coverage for damage caused by viruses under the ISO policies, and therefore, the virus exclusion did not change the policy or reduce coverage. No premium reduction was associated with the addition of the virus exclusion.

27.     Plaintiff did not negotiate for the inclusion of the Virus Exclusion.

28.     Plaintiff did not receive any premium reduction for the inclusion of the Virus Exclusion.

29.     Plaintiff did not receive any benefit or consideration for the inclusion of the Virus Exclusion.

30.     Plaintiff did not receive the benefit of any bargain related to the Virus Exclusion.

31.     Defendant received the unilateral benefit of excluding coverage for a risk while also receiving the same or even greater premium for the lesser coverage.

32.     A business and/or property owner who was even aware of the virus exclusion would conclude that the exclusion related to liability claims against the insured for transmitting the virus, not property damage claims.

33.     Defendant should be estopped from enforcing the Virus Exclusion, on principles of regulatory estoppel, as well as general public policy.

34.     In 2006, two insurance industry trade groups, ISO and the American Association of Insurance Services ("AAIS"), represented hundreds of insurers in a national effort to seek approval from state insurance regulators for the adoption of the Virus Exclusion.

35.     In their filings with the various state regulators, on behalf of the insurers, ISO and AAIS represented that the adoption of the Virus Exclusion was only meant to "clarify" that coverage for "disease-causing agents" has never been in effect, and was never intended to be included, in the property policies.

36.     Specifically, in its "ISO Circular" dated July 6, 2006 and entitled "New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria," ISO represented to the state regulatory bodies that:

> While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage to create sources of recovery for such losses, contrary to policy intent.

37.     Similarly, AAIS, in its "Filing Memorandum" in support of the Virus Exclusion, represented:

> Property policies have not been, nor were they intended to be, a source of recovery for loss, cost or expense caused by disease causing agents. With the possibility of a pandemic, there is concern that claims may result in efforts to expand coverage to create recovery for loss where no coverage was originally intended . . .

> This endorsement clarifies that loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress is excluded…

38.     The foregoing representations made by the insurance industry were false.

39.     By 2006, the time of the state applications to approve the Virus Exclusion, courts had repeatedly found that property insurance policies covered claims involving disease-causing agents, and had held on numerous occasions that any condition making it impossible to use property for its intended use constituted "physical loss or damage to such property."

9

40.     Upon information and belief, the insurance department relied on the industry's and Defendant's representation when the department approved the Virus Exclusion for inclusion in standard comprehensive policies without a reduction in premiums to balance a reduction in coverage.

41.     The foregoing assertions by the insurance industry (including Defendant), made to obtain regulatory approval of the Virus Exclusion, were misrepresentations and for this reason, among other public policy concerns, Defendant should now be estopped from enforcing the Virus Exclusion to avoid coverage of claims related to the COVID-19 pandemic.

42.     In securing approval for the adoption of the Virus Exclusion by misrepresenting to the state regulators that the Virus Exclusion would not change the scope of coverage, Defendant effectively narrowed the scope of the insuring agreement without a commensurate reduction in premiums charged.

43.     Defendant's Virus Exclusion is essentially the same exclusion as the exclusion promoted by ISO and AAIS.

44.     Under the doctrine of regulatory estoppel, the Court should not permit Defendant to benefit from this type of duplicitous conduct before the state regulators.

45.     Upon information and belief, Defendant has denied, or will deny, all claims for coverage under their "all-risk" property damage policies it issued.

46.     Defendant's denial of lost business income claims left Plaintiff and similarly situated business without vital coverage acquired to ensure the survival of their business during the suspension of operations.

47.     Meanwhile, Defendant receives the benefit of an exclusion for which Plaintiff and similarly situated insureds received no bargain, reduction of premiums or any benefit whatsoever.

10

### C. The COVID-19 Virus

48. SARS-CoV-2 is a virus.

49. SARS-CoV-2 is a physical substance.

50. SARS-CoV-2 is a human pathogen that causes the disease COVID-19, which can be lethal.

51. SARS-CoV-2 particles can be present outside the human body in viral fluid particles.

52. SARS-CoV-2 can spread through droplets in the air when someone talks, coughs or sneezes.

53. SARS-CoV-2 can and does remain capable of being transmitted and active on inert physical surfaces for a period of time.

54. SARS-CoV-2 particles can remain suspended in the air for hours. They can also remain active on various surfaces for up to 72 hours, including:

- Copper: Up to 4 hours;

- Cardboard: Up to 24 hours;

- Plastic: 2 to 3 days;

- Stainless steel: 2 to 3 days.

55. SARS-CoV-2 can and does remain capable of being transmitted and active on floors, walls, furniture, desks, tables, chairs, countertops, touch screens, cardboard packages, food items, silverware, plates, serving trays, glasses, straws, menus, pots, pans, kitchen utensils, refrigerators, freezers, and other items of property for a period of time.

56. SARS-CoV-2 can be transmitted by way of human contact with surfaces and items of physical property on which SARS-CoV-2 particles are physically present.

11

57.     SARS-CoV-2 has been transmitted by way of human contact with surfaces and items of physical property located at premises in Illinois.

58.     SARS-CoV-2 has been transmitted by human to human contact and interaction at premises in Illinois, including places like bars and restaurants.

59.     SARS-CoV-2 can be transmitted through airborne particles emitted into the air at premises.

60.     SARS-CoV-2 has been transmitted by way of human contact with airborne SARS-CoV-2 particles emitted into the air at premises in Illinois.

61.     The presence of any SARS-CoV-2 particles renders items of physical property unsafe.

62.     The presence of any SARS-CoV-2 particles on physical property impairs its value, usefulness and/or normal function.

63.     The emission or presence of SARS-CoV-2 particles in the air physically alters the molecular and structural composition of the air.

64.     The presence of any SARS-CoV-2 particles causes direct physical harm to property.

65.     The presence of any SARS-CoV-2 particles causes direct physical loss to property.

66.     The presence of any SARS-CoV-2 particles causes direct physical damage to property.

67.     The presence of any SARS-CoV-2 particles at premises renders the premises unsafe, thereby impairing the premises' value, usefulness, and/or normal function.

68.     The presence of people infected with or carrying SARS-CoV-2 particles renders physical property in their vicinity unsafe and unusable, resulting in direct physical loss to that property.

69.     The presence of people infected with or carrying SARS-CoV-2 particles at premises renders the premises, including property located at that premises, unsafe, resulting in direct physical loss to the premises and property.

**D.  COVID-19 is a "Communicable Disease"**

70.     Communicable diseases are those that spread by an infectious agent, such as bacteria, viruses, fungi or parasites.

71.     Most of these diseases can be passed from person to person and/or property to person.

72.     Some communicable disease spread through the air. Others require direct contact with a contaminated surface, food or beverage, blood or other bodily fluid.

73.     Some communicable diseases, including COVID-19, can be transmitted in more than one way.

74.     COVID-19 is a communicable disease.

**E.  Illinois' Response to COVID-19**

75.     In response to the physical presence SARS-CoV-2 and the COVID-19 Pandemic, the Governor of Illinois has issued multiple executive orders pursuant to the authority vested in him by the Illinois Constitution and the laws of Illinois.

76.     Similarly, the Illinois Department of Health, pursuant to its authority under Illinois law, has issued multiple orders, including a Stay At Home Order.

77.     The State of Illinois is a civil authority as contemplated by the Policy.

13

78.     The Illinois Department of Health is a civil authority as contemplated by the Policy.

79.     The Governor of the State of Illinois is a civil authority as contemplated by the Policy.

80.     On March 9, 2020, Illinois Governor J.B. Pritzker issued an Executive Order declaring all counties in Illinois a disaster area in response to the physical presence of SARS-CoV-2 in the community.

81.     On March 16, 2020, Illinois Governor J.B. Pritzker issued Executive Order 2020-07 stating "it is necessary and appropriate for the State of Illinois to immediately take measures to protect the public's health in response to this COVID-19 outbreak." This order was in response to the physical presence of SARS-CoV-2 and the COVID-19 Pandemic.

82.     On March 20, 2020, Governor Pritzker, in response to the physical presence of SARS-CoV-2 in the community, issued a Closure Order (Executive Order 2020-10) (a.k.a., a Stay At Home Order) requiring all Illinois residents to stay at home barring exceptions such as essential travel for essential work or supplies, exercise and recreation, through April 7, 2020. Moreover, the March 20th order reduced the allowable public and private gathering size to no more than 10 people. The March 20th order was again in direct response to the continued and increasing presence of the coronavirus on property or around Plaintiff's premises.

83.     The March 20th order called for the suspension of all licensed day care centers, day care homes, and group day care homes in order to protect the health and safety of children and staff.

84.     The March 20th order specifically acknowledges that SARS-CoV-2 and the COVID-19 Pandemic cause direct physical loss and damage to property. In pertinent part,

paragraph 12(I) of the March 20th order provides that the virus has the "propensity to physically impact … surfaces and personal property." [emphasis added]

85.     On March 20, 2020, the Department of Children and Family Services (DCFS) began issuing Emergency Day Care (EDC) Licenses to ensure licensed child care was available to children and families of essential workers, with an emphasis on those in health care, public health, human services, law enforcement, public safety, and first responder fields.

86.     On May 29, 2020, the Governor announced Restore Illinois, a comprehensive phased plan to safely reopen the State's economy, get people back to work, and ease social restrictions.

87.     Under Phase III of Restore Illinois (Executive Order 2020-38), licensed childcare was allowed reopen pursuant to certain restrictions.

88.     In pertinent part, childcare programs that had been closed during phases 1 and 2 of Restore Illinois were required to operate at a reduced capacity for the first 4 weeks to support successful implementation of the heightened health and safety standards.

89.     Within days of the initial Illinois Closure Orders taking effect, Plaintiff learned that one of its employees fell ill with what has since been discovered to be COVID-19. Additional enrollees and children's family members have also tested positive since the Closure Orders took effect in March 2020.

**F. Illinois' Exercise of Civil Authority Closes Plaintiffs' Businesses**

90.     Plaintiff's business was required to cease and/or significantly reduce operations at its location in response to the presence of SARS-CoV-2, the spread of COVID-19 and the aforementioned orders.

15

91.     Independent of the orders at issue, the overwhelmingly likely presence of SARS-CoV-2 particles at, on, and in Plaintiff's insured premises and property interrupted Plaintiff's normal business operations and resulted in significant losses.

92.     The civil authority orders, including, but not limited to the Stay At Home Order previously in effect, prohibited access to Plaintiff's premises described in the Policy.

93.     The State of Illinois, through the Governor and the Department of Health, have issued, and continue to issue, authoritative orders governing Illinoisans and Illinois businesses, including Plaintiff's, in response to the physical presence of SARS-CoV-2 and the COVID-19 Pandemic, the effect of which have required and continue to require Plaintiff to cease and/or significantly reduce operations at, and that have prohibited and continue to prohibit access to, the premises described in the Policies.

94.     State and local governmental authorities, and public health officials around the Country, acknowledge that SARS-CoV-2 and the COVID-19 Pandemic cause direct physical loss and damage to property.  For example:

- The state of Colorado issued a Public Health Order indicating that "COVID-19… physically **contributes to property loss, contamination, and damage**…" (Emphasis added);

- The City of New York issued an Emergency Executive Order in response to COVID-19 and the Pandemic, in part "because the virus **physically is causing property loss and damage**." (Emphasis added);

- Broward County, Florida issued an Emergency Order acknowledging that COVID-19 "**is physically causing property damage**." (Emphasis added);

- The State of Washington issued a stay at home Proclamation stating the "COVID-19 pandemic and its progression… remains a public disaster affecting life, health, [and] **property**…" (Emphasis added);

16

- The State of Indiana issued an Executive Order recognizing that COVID-19 has the "propensity to ***physically*** impact surfaces and personal ***property***." (Emphasis added);

- The City of New Orleans issued an order stating "there is reason to believe that COVID-19 may spread amongst the population by various means of exposure, including the propensity to attach to surfaces for prolonged period of time, thereby spreading from surface to person and ***causing property loss and damage*** in certain circumstances." (Emphasis added);

- The State of New Mexico issued a Public Health Order acknowledging the "threat" COVID-19 "poses" to "***property***." (Emphasis added);

- North Carolina issued a statewide Executive Order in response to the Pandemic not only "to assure adequate protection for lives," but also to "assure adequate protection of… ***property***." (Emphasis added); and

- The City of Los Angeles issued an Order in response to COVID-19 "because, among other reasons, the COVID-19 virus can spread easily from person to person and it is ***physically causing property loss or damage*** due to its tendency to attach to surfaces for prolonged periods of time." (Emphasis added).

95.    SARS-CoV-2 and the COVID-19 Pandemic are physically impacting public and private property in Illinois and throughout the country.

96.    SARS-CoV-2 and the COVID-19 Pandemic have caused and continue to cause direct physical loss and damage to property.

97.    People in Illinois have been diagnosed with SARS-CoV-2.

98.    People in Illinois have, and have had, SARS-CoV-2 but have not been diagnosed.

99.    People in Illinois have SARS-CoV-2 particles on or about their person and personal property.

100.    Properties and premises throughout Illinois contain the presence of SARS-CoV-2 particles on surfaces and items of property.

101.    SARS-CoV-2 particles have been physically present at Plaintiff's premises described in the Policies during the time the Policies were in effect.

102.    SARS-CoV-2 particles have been physically present on surfaces and items of property located at Plaintiff's premises described in the Policy during the time the Policy were in effect.

103.    Airborne SARS-CoV-2 particles have been physically present at Plaintiff's premises described in the Policy during the time Policy the was in effect.

104.    People carrying SARS-CoV-2 particles in, on or about their person have been present at Plaintiff's premises described in the Complaint during the time the Policy was in effect.

105.    Airborne SARS-CoV-2 particles have been physically present at Plaintiff's premises described in the Policy during the time the Policy was in effect.

106.    Plaintiff has sustained direct physical loss of  and damage to items of property located at its premises and direct physical loss and damage to its premises described in the Policy as a result of the presence of SARS-CoV-2 particles and/or the Pandemic.

107.    Plaintiff has sustained a necessary suspension of its operations caused by direct physical loss of or damage to insured property at the described premises. This loss or damage was caused by or resulted from a Covered Cause of Loss.

108.    Plaintiffs have sustained loss of Business Income and necessary Extra Expense caused by the actions of civil authorities that have prohibited access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from a Covered Cause of Loss.

109. The presence of SARS-CoV-2 and COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business.

110. Plaintiff submitted a timely insurance claim to Defendant, West Bend.

111. Defendant West Bend has denied Plaintiff's claim.

112. There is a dispute about whether Plaintiff is entitled to coverage under the Policy for its losses sustained and to be sustained in the future. Accordingly, Plaintiff is entitled to declaratory relief from this Court pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

## IV. CLASS ALLEGATIONS

113. Pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of itself and the following class (the "Class") of similarly situated persons:

- All persons and entities that: (a) had Business Income coverage under a property insurance policy issued by West Bend; (b) suffered a suspension of business related to the presence of SARS-CoV-2 and/or the spread of COVID-19, at the premises covered by their West Bend property insurance policy; (c) made a claim under their property insurance policy issued by West Bend; and (d) were denied Business Income coverage by West Bend for the suspension of business resulting from the presence or threat of COVID-19 (the "Business Income Breach Class").

- All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by West Bend; (b) suffered loss of Business Income and/or Extra Expense caused by action of a civil authority; (c) made a claim under their property insurance policy issued by West Bend; and (d) were denied Civil Authority coverage by West Bend for the loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Breach Class").

- All persons and entities that: (a) had Extra Expense coverage under a property insurance policy issued by West Bend; (b) sought to minimize the suspension of business in connection with SARS-CoV-2 and/or the spread of COVID-19 at the premises covered by their West Bend property insurance policy; (c) made a claim under their property insurance policy issued by West Bend; and (d) were denied Extra Expense coverage by West Bend despite their efforts to minimize the suspension of business caused by COVID-19 (the "Extra Expense Breach Class").

19

- All persons and entities that: (a) had Communicable Disease Business Income and Extra Expense Coverage under a property insurance policy issued by West Bend; (b) made a claim under their property insurance policy issued by West Bend; and (c) were denied Communicable Disease Business Income and Extra Expense Coverage by West Bend (the "Communicable Disease Breach Class").

- All persons and entities with Business Income coverage under a property insurance policy issued by West Bend that suffered a suspension of business due to SARS-CoV-2 and/or the spread of COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

- All persons and entities with Civil Authority coverage under a property insurance policy issued by West Bend that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

- All persons and entities with Extra Expense coverage under a property insurance policy issued by West Bend that sought to minimize the suspension of business in connection with SARS-CoV-2 and/or COVID-19 at the premises covered by their West Bend property insurance policy (the "Extra Expense Declaratory Judgment Class").

- All persons and entities with Communicable Disease Business Income and Extra Expense Coverage under a property insurance policy issued by West Bend that were denied Communicable Disease Business Income and Extra Expense Coverage by West Bend (the "Communicable Disease Declaratory Judgment Class").

114. The following are Excluded from the Class: Defendant, including any parent, subsidiary, affiliate, or controlled person of Defendant; Defendant's officers, directors, agents, or employees; and the judicial officers assigned to this litigation, and any members of their staffs and immediate families.

115. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add subclasses, if necessary, before this Court determines whether certification is appropriate.

### a. **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**

116.    The precise number of class members for the Class are unknown to Plaintiff at this time but can be easily determined through appropriate discovery. Plaintiff believes that because Defendant is a large insurer with a notable presence nationwide and writes millions of dollars of business coverage premiums, the class of persons affected by Defendant's practices described herein consists of numerous businesses or the class of persons affected are otherwise so numerous that joinder of all class members is impractical.   The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits properly owed to Plaintiff and the class members.  The class definition will permit the court to reasonably ascertain whether any individual or entity is a member of the class as any individual who or entity that is insured by Defendant and was denied coverage for SARS-CoV-2 related losses covered by Business Interruption, Extra Expense, Civil Authority, and Communicable Disease Business Income and Extra Expense coverage provisions.

117.    Upon information and belief, Defendant uniformly refuses to pay insureds for SARS-CoV-2 related losses covered by Business Interruption, Extra Expense, Civil Authority, and/or Communicable Disease Business Income and Extra Expense coverage provisions of its business insurance policies. Accordingly, the Class consists of many hundreds, if not thousands, of Defendant's insureds who were not paid or afforded coverage under the terms of their insurance policies. Thus, pursuant to Illinois Rule of Civil Procedure 735 ILCS 5/2-801(1), the large size of the Class renders the Class so numerous that joinder of all individual members is impracticable.

Case 2:20-cv-01661-WED   Filed 11/02/20   Page 21 of 30   Document 1

### G. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2)**

118.    Common questions of law and fact predominate in this matter because Defendant's conduct towards the members of the Class is identical. Defendant uniformly refuses to pay for losses covered by Business Interruption, Extra Expense, Civil Authority, and/or Communicable Disease Business Income and Extra Expense coverage provisions arising from SARS-CoV-2, COVID-19 and/or the COVID-19 Pandemic.  Indeed, upon information and belief, Defendant responds to every claim at issue with an identical form letter reserving its rights and refusing to honor the claim(s).

119.    Plaintiff shares a common interest with all members of the putative Class in the objects of the action and the relief sought.

120.    Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(2) commonality requirement because its claim arises from a practice which Defendant applies uniformly to all the similarly situated class members and are based on the same legal theories as all other members of the putative class, that coverage for SARS-CoV-2  related losses of Business Income coverage, Extra Expense coverage, and coverage for loss due to the actions of a Civil Authority, including losses covered under the Communicable Disease Business Income and Extra Expense coverage provisions of the Policy. Because Defendant's conduct was and is uniform as to all class members, the material elements of Plaintiff's claim and those of absent class members are subject to common proof, and the outcome of Plaintiff's individual action will be dispositive for the Class. The common questions include, but are not limited to, the following:

- Whether SARS-CoV-2 can cause direct physical loss or damage to property as stated and defined in the common policy forms at issue SARS-CoV-2, COVID-19;

- Whether SARS-CoV-2 and/or COVID-19 is a covered cause of loss under the Policy;

- Whether the COVID-19 Pandemic is a covered cause of loss under the Policy;

- Whether the losses incurred by insureds as the result of the orders issued by the civil authority actors (e.g., Governors, Mayors, the Department of Health, etc.) are covered losses under the Policies;

- Whether insureds are entitled to coverage for their past and future Business Income loss(es) and Extra Expense resulting from SARS-CoV-2, COVID-19 and/or the COVID-19 Pandemic for the time period set forth in their Policies;

- Whether insureds are entitled to coverage for loss(es) due to the actions of Illinois' civil authorities, including the Governor of Illinois and the Illinois Department of Health; and

- Whether insureds have coverage for any substantially similar civil authority order in the future that limits or restricts the access to insureds places of business and/or their operations.

## H. Typicality – Federal Rule of Civil Procedure 23(a)(3)

121.    Plaintiff's claim is typical of the other Class members' claims because Plaintiff and the other Class members are all similarly affected by Defendant's refusal to pay under its Business Income, Civil Authority, Extra Expense, and Communicable Disease Business Income and Extra Expense coverages. Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff's and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

## I. Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)

122.    Plaintiff can and will adequately represent the putative class and its interests are common to, and coincident with, those of all absent class members. By proving its individual claims, Plaintiff will necessarily prove the claims of the putative class and prove Defendant's liability to the Class. Plaintiff has no known conflicts of interest with any members of the Class; its interests and claims are not antagonistic to those of any other class members; nor are its claims subject to any unique defenses.

23

123. Plaintiff and Class members' legal claims arise from the same core practices, namely, the refusal to provide coverage for SARS-CoV-2 related losses covered by Business Income coverage, Extra Expense coverage, and coverage for loss due to the actions of a Civil Authority, including losses covered under the Communicable Disease Business Income and Extra Expense coverage provisions of the Policy. The material facts underlying the claims of each putative class member are the same material facts as those supporting Plaintiff's claims alleged herein and require proof of the same material facts.

124. The representative Plaintiff therefore can and will fairly and adequately protect and represent the interests of the Class

125. Plaintiff's counsel—Romanucci & Blandin, LLC, Spangenberg Shibley & Liber, LLP, and Rutter & Russin LLC—have extensive experience in complex commercial litigation, insurance coverage dispute litigation, class actions, and have adequate financial resources to ensure that the interests of the Class will not be harmed.

126. If appointed class representative, Plaintiff is aware of, and is committed to, faithfully upholding its fiduciary duties to absent Class members. Plaintiff and their counsel are committed to the vigorous prosecution of this action and will allocate the appropriate time and resources to ensure that the class is fairly represented.

127. Plaintiff and its counsel will therefore fairly and adequately assert and protect the interests of the Class.

**J. Inconsistent or Varying Adjudications and Risk of Impediments to Other Class Members Interests – Federal Rule of Civil Procedure 23(b)(1)**

128. Plaintiff seeks class-wide adjudication as to the interpretation and scope of Defendant's Business Income, Civil Authority, Extra Expense, and Communicable Disease Business Income and Extra Expense coverages. The prosecution of separate actions by individual

members of the Class(es) would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant. Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

### K. <u>Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2)</u>

129.    Pursuant to Federal Rules of Civil Procedure 23(b)(2), class treatment is warranted because Defendant has acted or refused to act on grounds generally applicable to all the members of the Class, thereby making final declaratory relief concerning the Class as a whole appropriate.

130.    Because declaratory relief is sought, class treatment ensures uniformity and consistency in results, enables the many small claims of Class members as well as claims for class-wide declaratory relief to be brought efficiently, and will provide optimum relief to Class members for their past and future injuries, as well as deter Defendant and other similar businesses from engaging in such wrongful conduct in the future.

131.    Because Defendant has acted consistently towards all members of the Class, declaratory relief is appropriate with respect to both the Class and Plaintiff's claims and is likewise subject to common proof and adjudication.

132.    Based on the foregoing, class treatment is the most fair and efficient form of adjudication for this matter.

### L. <u>Superiority – Federal Rule of Civil Procedure 23(b)(3)</u>

133.    Class treatment provides an appropriate method for adjudication of this controversy insofar the class action can best secure the economics of time, effort, and expense and promote uniformity of decision. Indeed, the prosecution of separate actions by individual class members

would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

134.    Defendant's standardized language in the Policies and forms at issue regarding coverage for Business Income losses, Extra Expense losses, and coverage for loss due to the actions of a Civil Authority, including losses covered under the Communicable Disease Business Income and Extra Expense coverage provisions of the Policy, is present in every West Bend policy issued by Defendant to the putative class members.

135.    As a result, separate actions brought by individual Class members would possibly lead to a situation where identical language is interpreted differently.

### M.  Manageability and Ascertainability

136.    This matter presents an easily organizable and calculable universe of class members, particularly because Defendant has access, by way of its own records, to all of the names and addresses of all policyholders—including all Class members—during the relevant time period. Defendant's current and former policyholders can be ascertained through its own internal records system via an audit.

### N.  Declaratory Relief

137.    Class treatment is warranted because Defendant has acted or refused to act on grounds generally applicable to all the members of the Class, thereby making final declaratory relief concerning the Class appropriate.

138.    Because declaratory relief is sought, class treatment ensures uniformity and consistency in results, enables the many small claims of class members as well as claims for class-wide declaratory relief to be brought efficiently, and will provide optimum relief to class members

for their past and future injuries, as well as deter Defendant and other similar businesses from engaging in such wrongful conduct in the future.

139. Because Defendant has acted consistently towards all members of the Class, declaratory relief is appropriate with respect to both the Class and Plaintiff's claims and is likewise subject to common proof and adjudication.

140. Based on the foregoing, class treatment is the most fair and efficient form of adjudication for this matter.

## COUNT I: DECLARATORY JUDGMENT

141. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

142. Plaintiff brings this count on behalf of itself and all members of the Class.

143. There is a dispute about whether Plaintiff and the Class members are entitled to coverage under the Policy for their loss(es) sustained and to be sustained in the future as described herein. Accordingly, Plaintiff is entitled to declaratory relief from this Court pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 on behalf of itself and the Class.

144. Plaintiff is entitled to and demands a declaration that:

- Plaintiff and the class members sustained direct physical loss of or damage to properties at theirs premises described in the Policies as a result of SARS-CoV-2, COVID-19 and/or the COVID-19 Pandemic;

- SARS-CoV-2 and/or COVID-19 is a covered cause of loss under the Policy;

- The COVID-19 Pandemic is a covered cause of loss under the Policy;

- The losses incurred by Plaintiff and the Class members as the result of orders issued by civil authority actors (e.g., Governors, Mayors, and Departments of Health, etc.) are covered losses under the Policy;

- Defendant West Bend has not and cannot prove the application of any exclusion or limitation to the coverage for Plaintiff and the Class members losses alleged herein;

27

- Plaintiff and the Class members are entitled to coverage for their past and future Business Income loss(es) and Extra Expense resulting from SARS-CoV-2, COVID-19 and/or the COVID-19 Pandemic for the time period set forth in the Policy;

- Plaintiff and the Class members are entitled to coverage for loss(es) due to the actions of civil authority actors, including Governors, Mayors, Departments of Health, etc.;

- Plaintiff and the Class members have coverage for any substantially similar civil authority order in the future that limits or restricts the access to Plaintiffs or the Class members' places of business and/or their operations; and

- Any other issue that may arise during the course of litigation that is a proper issue on which to grant declaratory relief.

145. Plaintiff and the Class members do not seek a determination of their damages resulting from SARS-CoV-2, the COVID-19 or the COVID-19 Pandemic. If there is a dispute between the parties as to the amount of the loss, the Policy provides that such a dispute should be resolved by **Appraisal**:

**Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

146. Plaintiff, individually and on behalf of those similarly situated, pray for declaratory relief from the Court that Defendant West Bend must resolve any dispute about the amount of loss via Appraisal. Plaintiff also requests the Court to appoint the umpire if the appraisers cannot agree.

28

147.    Plaintiff, individually and on behalf of those similarly situated, prays for any further relief the Court deems proper, including attorney fees, interest, and costs as allowed by law or in the exercise of the Court's equitable jurisdiction.

WHEREFORE, Plaintiff, individually and on behalf of those similarly situated, seeks judgment against Defendant West Bend, as set forth above, plus interest, costs, and attorney fees as allowed by law.

### DEMAND FOR TRIAL BY JURY

Dated: November 2, 2020                Respectfully Submitted,

By:/s/ *Antonio M. Romanucci*
Attorney for the Plaintiff

Antonio M. Romanucci
Gina A. Deboni (application for admission to be filed)
David A. Neiman (application for admission to be filed)
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark St., Suite 900
Chicago, IL 60654
Tel: (312) 458-1000
Fax: (312) 458-1004
aromanucci@rblaw.net
gad@rblaw.net
dneiman@rblaw.net

Nicholas A. DiCello (application for admission to be filed)
Dennis R. Lansdowne (application for admission to be filed)
Stuart E. Scott (application for admission to be filed)
Jeremy A. Tor (application for admission to be filed)
**SPANGENBERG, SHIBLEY & LIBER, LLP**
1001 Lakeside Ave., Suite 1700
Cleveland, Ohio 44114
ndicello@spanglaw.com
dlansdowne@spanglaw.com
sscott@spanglaw.com
jtor@spanglaw.com

Robert P. Rutter (application for admission to be filed)
Robert A. Rutter (application for admission to be filed)
**RUTTER & RUSSIN, LLC**
One Summit Office Park, Suite 650
4700 Rockside Road

Cleveland, Illinois 44131
(216) 642-1425
brutter@ohioinsurancelawyer.com
bobbyrutter@ohioinsurancelawyer.com