**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**GREEN BEGINNINGS, LLC,**

**Plaintiff,**

**v.** **Case No. 20-CV-1661**

**WEST BEND INSURANCE COMPANY,**

**Defendant.**

---

# ORDER

---

## 1. Procedural History

On November 2, 2020, Plaintiff Green Beginnings, LLC filed a complaint in the Eastern District of Wisconsin alleging it is entitled to a declaratory judgment against Defendant West Bend Insurance Company. (ECF No. 1 at 1, 27.) Green Beginnings filed the complaint on behalf of itself and a proposed class. (ECF No. 1 at 27.) On December 14, 2020, West Bend filed a motion to dismiss (ECF No. 13) and a motion to strike the class allegations in the complaint (ECF No. 15).

On November 25, 2020, Green Beginnings filed a joint motion to consolidate this case with *Little Ones Preschool Inc. v. West Bend Mutual Insurance Company* (2:20-CV-01428) into the first-filed *Paradigm Care & Enrichment Center, LLC v. West Bend Mutual Insurance*

*Company* (2:20-CV-00720). (ECF No. 8.) On March 26, 2021, District Judge J. P. Stadtmueller granted a motion to dismiss *Paradigm Care & Enrichment Center, LLC v. West Bend Mutual Insurance Company*.

All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). (*See* ECF Nos. 20, 22.)

**2. Facts**

The following allegations are taken from Green Beginnings' complaint.

Green Beginnings, an Illinois limited liability company, is an early childhood and infant center. (ECF No. 1 at 1.) West Bend is a Wisconsin insurance company that sells insurance contracts to commercial entities in Illinois and elsewhere. (ECF No. 1, ¶ 2.) West Bend insured Green Beginnings at all times relevant. (ECF No. 1, ¶ 6.)

West Bend's all-risk policy protects against "direct physical loss of or damage to Covered Property at the premises…caused by or resulting from any Covered Cause of Loss." (ECF No. 1-1 at 25.) "Covered Property" is defined to include the buildings where Green Beginnings' business operations are located, and the Business Personal Property located in or on the premises. (ECF No. 1-1 at 25.) "Covered Cause of Loss" is defined as "[d]irect physical loss unless the loss is excluded or limited." (ECF No. 1-1 at 26.)

The policy also provides certain "Additional Coverages." Relevant to this lawsuit are the policy's additional coverages for lost "Business Income," "Extra Expense" incurred by Green Beginnings to minimize interruption or to continue operations,

"Communicable Disease Business Income and Extra Expense Coverage," and "Civil Authority" coverage, which provides coverage when a civil order prohibiting access to the business premises results in lost Business Income and/or Extra Expense.

The Business Income provision covers certain losses of business income caused by direct physical loss of or damaged to the covered property. It provides in relevant part that West Bend:

> will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of such premises.

(ECF No. 1-1 at 28.) The "period of restoration" is defined as the time that "(a) Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises" and "(b) Ends on the earlier of (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location." (ECF No. 1-1 at 64.)

The Extra Expense provision provides in relevant part:

> We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

(ECF No. 1-1 at 35.) "Extra Expense" means expenses incurred "[t]o avoid or minimize the suspension of business and to continue 'operations.'" (ECF No. 1-1 at 35.)

Separately, the policy includes Civil Authority Coverage, which provides:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises provided that both of the following apply:
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(ECF No. 1-1 at 30-31.)

The policy also includes a provision for "Communicable Disease Business Income and Extra Expense Coverage," which provides in relevant part:

> You may extend this insurance to apply to the actual loss of Business Income or Extra Expense that you sustain as the result of your "operations" being temporarily shut down or suspended as ordered by a local, state, or federal board of health or similar governmental board that has jurisdiction over your "operations". The shutdown or suspension must be due to an outbreak of a "communicable disease" or a "waterborne pathogen" at the insured premises as described in the Declarations.
> …The coverage for Business Income and Extra Expense will begin 24 hours after the jurisdictional board shuts down or suspends your "operations" and will end within 30 days after the jurisdictional body certifies that the described premises are habitable and that you may fully or partially resume your "operations".

(ECF No. 1-1 at 32.)

And, finally, the policy has a Virus Exclusion, which provides:

> (1) Any virus, bacterium or other microorganism that incudes or is capable of inducing physical distress, illness or disease.
> (2) However, the exclusion in Paragraph
>     (1) does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion h.
> (3) With respect to any loss or damage subject to the exclusion in Paragraph (1), such exclusion supersedes any exclusion relating to "pollutants".
>
> This exclusion does not apply:
> (1) When bacteria results from fire or lightning; or
> (2) To the extent that coverage is provided in the Limited Coverage For "Fungi", Wet Rot Or Dry Rot and Bacteria Additional Coverage if any, with respect to loss or damage by a cause of loss other than fire or lightning.

(ECF No. 1-1 at 56.)

On March 20, 2020, in response to the COVID-19 Pandemic, Illinois Governor J.B. Pritzker issued a Closure Order requiring Illinois residents to stay home, with exceptions for travel for essential work or supplies, and suspending all licensed day care centers. (ECF No. 1, ¶ 82.) "[T]he March 20th order provides that the virus has the 'propensity to physically impact … surfaces and personal property.'" (ECF No. 1, ¶ 84.) On March 20, 2020, the Department of Children and Family Services (DCFS) began issuing Emergency Day Care Licenses to ensure licensed childcare for children of essential workers. (ECF No. 1, ¶ 85.) On March 29, 2020, Governor Pritzker announced a plan to reopen the state that allowed licensed childcare to reopen with certain restrictions. (ECF No. 1, ¶¶ 86-88.)

Green Beginnings suffered losses from the COVID-19 Pandemic and orders issued by the Governor Pritzker and the Illinois Department of Health addressing the COVID-19 Pandemic. (ECF No. 1, ¶ 18.) Green Beginnings filed an insurance claim with West Bend for the loss of Business Income, Extra Expense Coverage, and coverage for loss due to the actions of a Civil Authority due to the COVID-19 Pandemic. (ECF No. 1, ¶¶ 18, 110.) West Bend denied Green Beginnings' claim. (ECF No. 1, ¶ 111.)

**3. Motion to Dismiss Standard**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint that offers mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiffs." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

**4. Analysis**

When federal courts obtain jurisdiction through diversity of citizenship, they ordinarily apply "the substantive law of the state in which the district court sits, including choice of law rules." *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012) (internal citations omitted). When determining "which jurisdiction's law applies to a contractual dispute," Wisconsin courts apply "the law of the jurisdiction with which the contract has its most significant relationship[.]" *State Farm Mut. Auto. Ins. Co. v. Gillette*, 641 N.W.2d 662, 670–71 (Wis. 2002) (citations and alterations omitted); *Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mut. Ins. Co.*, No. 20-CV-720-JPS, 2021 U.S. Dist. LEXIS 57945, at *12 (E.D. Wis. Mar. 26, 2021). Both parties are seemingly in agreement that Illinois law governs the interpretation of the West Bend policy. (ECF Nos. 11 at 11; 25 at 14.)

Illinois courts liberally construe insurance contracts in favor of the insured. *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 753 (Ill. 2009) (citing *Lenkutis v. New York Life Insurance Co.*, 28 N.E.2d 86 (Ill. 1940); *United Services Automobile Ass'n v. Dare*, 830 N.E.2d 670, 678 (Ill. App. 2005). "[T]he court must construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." (ECF No 25 at 11.) (quoting *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 860 N.E.2d 280, 286 (Ill. 2006) (internal citation omitted)). "The words of a policy should be accorded their plain and ordinary meaning. Where the provisions of a

policy are clear and unambiguous, they will be applied as written unless doing so would violate public policy." *Nicor, Inc.*, 860 N.E.2d at 286 (internal citations omitted).

In its motion to dismiss West Bend argues that Green Beginnings has not and cannot show that its claim falls within the policy's grant of coverage. Green Beginnings responds that it has sufficiently alleged facts that trigger coverage.

**4.1 Business Income & Extra Expense Coverage**

For Green Beginnings to state a prima facie claim of coverage under the Business Income or Extra Expense provisions, it must show that it has suffered "direct physical loss of or physical damage to" covered property. West Bend argues that "direct physical loss of or physical damage to" property requires damage or loss that is material, tangible, distinct, and demonstrable. (ECF No. 14 at 18-19.) The requirement of a "period of restoration" confirms that the damage or loss must be of a nature that the property can be repaired, rebuilt or replaced. (*Id.* at 20.) The policy does not cover mere loss of use of the insured's property. (*Id.* at 19-20.) Because the COVID-19 virus does not alter property in appearance, shape, color or in any other material dimension, it does not cause a direct physical loss of or damage to Green Beginnings' property. (*Id.* at 17-18.)

Green Beginnings argues that "physical loss of" property is different from "physical damage to" property. "Loss" means deprivation, and a "physical loss of" property includes a business being physically deprived of the use of its business property. (ECF No. 25 at 18-19.) It also argues that, because the liability section of the policy defines

"property damage" as including "loss of use of that property," "damage to property" in the property section of the policy can be reasonably defined as including "loss of use." (*Id.* at 17.) Moreover, the complaint *does* allege that Green Beginnings' property was physically damaged by the virus.

As stated by one court, "[t]he critical policy language here—'direct physical loss'—unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage." *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 693 (N.D. Ill. 2020).

> If mere inability to use a property or inability to use it for its intended purpose is "direct physical loss," then a government order barring access to property would itself trigger business income or extra expense coverage because that lack of access would mean that the business could not use the property and was therefore suffering direct physical loss or damage. In that case, there would be no need for a separate Civil Authority provision granting coverage when civil authority orders bar access to premises under more limited circumstances.

*Moody v. Hartford Financial Group, Inc.*, No. 20-2856, 2021 U.S. Dist. LEXIS 7264, at *15 (E.D. Pa. Jan. 14, 2021); *see also Zwillo V. Corp. v. Lexington Ins. Co.*, No. 4:20-00339-CV-RK, 2020 U.S. Dist. LEXIS 230672, at *12 (W.D. Mo. Dec. 2, 2020) ("the term 'direct physical loss of or damage to' does not encompass simple deprivation of use").

The court recognizes that one court has found that plaintiffs alleging a loss of use of their property, even temporarily, adequately state a claim for direct physical loss. *See Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 804-03 (W.D. Mo. 2020). However, that decision is an outlier, and all other decisions of which this court is aware

that have addressed the issue agree that "direct physical loss" requires more than just the temporary loss of use of the insured's property. As one court has noted, "[g]iving separate effect to 'loss' and 'damage' in the phrase, 'direct physical loss of or damage to,' only highlights the distinction between 'the permanent dispossession of' and 'damage.'" *Real Hosp., LLC v. Travelers Cas. Ins.*, No. 2:20-cv-00087-KS-MTP, 2020 U.S. Dist. LEXIS 208599, at *12 (S.D. Miss. Nov. 4, 2020) (citing *Total Intermodal Svcs., Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 17-cv-4908, 2018 U.S. Dist. LEXIS 216917, at *2 (C.D. Cal. July 11, 2018)). "The property is either physically lost, *i.e.*, the insured suffers a permanent dispossession of the property, or it is damaged. After all, it is a commercial 'property' policy." *Id.* at *13. "Direct physical loss" does not include the temporary loss of use of the insured's property. *See 10E, LLC v. Travelers Indemnity Co. of Connecticut*, No. 2:20-cv-04418-SVW-AS, 2020 U.S. Dist. LEXIS 156827, at *14 (C.D. Cal. Aug. 28, 2020) (granting motion to dismiss when plaintiff's complaint did not allege that it was permanently dispossessed of any insured property).

Moreover, the court agrees with West Bend that the fact that Business Income and Extra Expense coverage is only provided during the period of restoration suggests that there is something to repair, rebuild, or replace—which would not be the case for the mere temporary loss of use of property unconnected to its physical condition.

As for Green Beginnings' contention that the virus is on its property and has damaged it, the presence of the virus on property does not cause a "loss" of the use of the

property. As stated above, "loss" means the permanent dispossession of the property—not the temporary loss of use of the property. *See Sandy Point Dental*, 488 F. Supp. 3d at 694 ("*Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 C 3311 (S.D.N.Y. 2020) (denying a motion for a preliminary injunction because COVID-19 does not cause direct physical loss; COVID-19 'damages lungs. It doesn't damage printing presses.')"); *Uncork and Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878, 883 (S.D. W. Va. 2020) ("[E]ven when present, COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant. Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property.").

COVID-19 particles only very temporarily impact the use of the objects they touch without altering them in appearance, shape, color, or other material dimension. The use of the object can be restored through disinfection. *See, e.g.*, *Uncork & Create LLC*, 498 F. Supp. 3d at 883 ("even when present, COVID-19['s]… presence on surfaces can be eliminated with disinfectant"); *Promotional Headwear Int'l v. Cincinnati Ins. Co.,* No. 20-CV-2211-JAR-GEB, 2020 WL 7078735, at *8 (D. Kan. Dec. 3, 2020) ("routine cleaning and disinfecting can eliminate the virus on surfaces"). COVID-19 particles do not damage or cause the loss of Green Beginnings' premises. To the extent the property continues to be unusable, it is because of the Governor's order, not because there has been a "direct physical loss" of the property.

Because Green Beginnings has not sufficiently pleaded "direct physical loss of or damage to" its premises, it does not qualify for Business Income or Extra Expense coverage. See *Paradigm Care & Enrichment Ctr., LLC*, 2021 U.S. Dist. LEXIS 57945, at *15. Thus, the court grants West Bend's motion to dismiss the complaint as to the claims under those provisions.

**4.2 Civil Authority Coverage**

Under the Civil Authority provision of the policy, when a Covered Cause of Loss causes damage to property *other than* property at the described premises, West Bend agreed to pay for the loss of Business Income sustained and Extra Expense caused by action taken by a civil authority that prohibits access to the insured premises, provided that *both*

> (1) Access to the area immediately surrounding the damaged property is ***prohibited by civil authority as a result of the damage***, and the described premises are within that area but are not more than one mile from the damaged property; and
> (2) The action of civil authority is taken ***in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss*** that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(ECF No. 1-1 at 30) (emphasis added).

West Bend argues that the complaint does not identify any particular property within one mile of Green Beginnings' premises that was damaged, resulting in Governor Pritzker prohibiting access to Green Beginnings' property. (ECF No. 14 at 22.) It contends

that the complaint conflates operational limitations with a prohibition against access. (*Id.*) Green Beginnings has not alleged that the Illinois Orders were issued in response to damage to any specific property. (*Id.* at 24.)

Green Beginnings responds that the complaint alleges that direct physical loss of or damage to covered property resulted in the Civil Authority order. Because the motive behind the shutdown order is a fact issue, it is not appropriate for the court to decide at the motion to dismiss stage whether Civil Authority coverage applies. (ECF No. 25 at 27.)

Green Beginnings refers to and quotes from Governor Pritzker's order and references other civil orders. (See, e.g., ECF No. 1, ¶ 81.) Because Green Beginnings relies on the Illinois Orders, the court treats them as part of the complaint. See *Paradigm Care & Enrichment Ctr., LLC*, 2021 U.S. Dist. LEXIS 57945, n.17.

The court agrees, and the complaint acknowledges, that the orders issued by Governor Pritzker were issued "[i]n response to the physical presence [of] SARS-CoV-2 and the COVID-19 Pandemic[.]" (ECF No. 1, ¶ 75.) But for there to be coverage under the Civil Authority provision, the relevant civil authority must prohibit access to the insured's property as a result of damage to a non-covered property. Although the complaint alleges that the Closure Order was issued "in direct response to the continued and increasing presence of the coronavirus on property or around Plaintiff's premises[,]" the same paragraph alleges the Closure order was in response to the physical presence of the virus "in the community[.]" (*Id.* at ¶ 82.) Green Beginnings does not plead any facts

that allow the court to infer that any particular property within the one-mile area immediately surrounding Green Beginnings' property was damaged, resulting in a Civil Authority issuing an order prohibiting access to that area.

In short, nothing in the complaint alleges that Governor Pritzker's executive orders were issued in response to alleged damage at property near Green Beginnings' covered premises. They were issued in response to the impact of COVID-19 on the community at large. While it is true that the government orders caused income loss by depriving Green Beginnings of the use of its property for a period of time, that loss is not covered under a plain reading of the Civil Authority Coverage provision of the policy. Because Green Beginnings did not "plead[] factual content that allows the court to draw the reasonable inference that" it is entitled to Civil Authority coverage, *Iqbal*, 556 U.S. at 678; *see also Paradigm Care & Enrichment Ctr., LLC*, 2021 U.S. Dist. LEXIS 57945, at *17 (finding that a childcare center closed pursuant to the Illinois orders did not sufficiently plead that it was entitled to civil authority coverage because it acknowledged that the orders responded to the spread of COVID-19 throughout the relevant region), the court must grant West Bend's motion to dismiss this aspect of the complaint.

**4.3 Communicable Disease Business Income and Extra Expense Coverage**

The Communicable Disease provision of the policy provides coverage for Green Beginnings' loss of Business Income or Extra Expense if a governmental board or board of health shuts down Green Beginnings' operations due to an outbreak of a

"communicable disease" at Green Beginnings' premises. West Bend contends that the complaint does not allege an outbreak at Green Beginnings' premises—that is, it does not allege that any staff, children, or family members were exposed to COVID-19 *at* Green Beginnings' premises and later tested positive or developed symptoms. (ECF No. 14 at 26.) Nor does the complaint allege that the Illinois Orders were issued "due to" an outbreak of the virus at Green Beginnings' premises. (*Id.* at 27.) Specifically, the complaint does not allege that any children or staff members tested positive for COVID-19 or developed symptoms *before* the issuance of the Illinois Orders, or that anyone was exposed to COVID-19 on or at Green Beginnings' insured premises and later tested positive or developed symptoms *before* the issuance of the Illinois orders.

Green Beginnings argues that it has sufficiently pleaded an outbreak at its covered premises because it was affected by the nationwide pandemic and an employee fell ill with COVID-19 within days of the orders. (ECF No. 25 at 28.) A court recently found that, because "plaintiff's premises were included geographically in the government shutdown orders," the hair salon had plausibly pled "an outbreak ***at the insured premises***." *Treo Salon, Inc. v. West Bend Mut. Ins. Co.*, No. 20-cv-1155-SPM, 2021 BL 172703 (S.D. Ill. May 10, 2021) (emphasis added).

The policy requires that the shutdown or suspension of operations must be due to an outbreak "at the insured premises." That language clearly requires that the plaintiff plead more than just that there was an outbreak in the region generally. *See, e.g., Dakota*

*Girls v. Phila. Indem. Ins. Co.*, No. 2:20-cv-2035, 2021 U.S. Dist. LEXIS 42489, at *24 (S.D. Ohio Mar. 8, 2021) (finding Communicable Disease Coverage did not apply when the contract required "losses arising from a communicable disease outbreak *at* the insured premises - *not* for an outbreak occurring elsewhere" and the plaintiff did not allege "that anyone on the premises was actually infected with COVID-19") (emphasis in original). The order shutting down Green Beginnings' operations must have been due specifically to an outbreak of COVID-19 at Green Beginnings' premises for there to be coverage under the Communicable Disease provision. The complaint contains no such allegation.

Because Green Beginnings has alleged no facts from which the court could infer an outbreak at Green Beginnings *caused* the shutdown or suspension of its operations, the court will grant the motion to dismiss the claim for Communicable Disease coverage in the complaint.

**4.4 Virus Exclusion Provision**

In any event, the Virus Exclusion Provision of the policy provides that West Bend "will not pay for loss or damage caused by or resulting from… [a]ny virus… that incudes [sic] or is capable of inducing physical distress, illness or disease." (ECF No. 1-1 at 54-56.) In the complaint, Green Beginnings alleges that, "[t]o the extent that the governmental orders, in and of themselves, constitute direct physical loss of or damage to Plaintiff's Covered Property, and/or preclusion of access to the Covered Property because of a Civil Authority order related to damage to nearby properties, the Virus Exclusion does not

apply[]" (ECF No. 1, ¶ 24); regulatory estoppel should estop West Bend from arguing now that the Virus Exclusion does change the policy (*Id.*, ¶¶ 33, 44); and a business would conclude that the exclusion applied to liability claims but not property damage claims (*Id.*, ¶ 32).

The language of the virus exclusion provision would clearly and unambiguously preclude coverage. As the complaint itself acknowledges, Governor Pritzker issued orders "in response to the physical presence SARS-CoV-2 [sic] and the COVID-19 Pandemic[.]" (ECF No. 1, ¶ 75.) Because a virus resulted in the Illinois Orders being issued, damage caused by the orders was caused by the virus. Also, the Insurance Services Office represented that the Virus Exclusion Provision merely clarified the existing exclusion of such loss. That representation is consistent with West Bend's current contention that COVID-19 is both not a covered cause of loss and a specifically excluded cause of loss. Thus, Green Beginnings fails to plausibly allege that the Virus Exclusion Provision is subject to regulatory estoppel.

And, finally, because the exclusion is in the Special Property Form, and the policy also has a separate Business Liability Form with its own exclusions, no reasonable business would think that the Virus Exclusion Provision applies only to liability coverage. (ECF No. 1-1 at 76-117.) Thus, the court finds that, even if COVID-19 losses were a covered cause of loss, the Virus Exclusion Provision would preclude coverage.

Because the court grants the motion to dismiss, the motion to consolidate and the motion to strike class allegations in plaintiff's complaint are denied as moot.

**5. Conclusion**

As one court has stated:

> [T]he pandemic impacts human health and human behavior, not physical structures. Those changes in behavior, including changes required by governmental action, caused the Plaintiff economic losses. The court is not unsympathetic to the situation facing the Plaintiff and other businesses. But the unambiguous terms of the Policy do not provide coverage for solely economic losses unaccompanied by physical property damage.

*Uncork and Create LLC*, 498 F. Supp. 3d at 884.

The question presented to the court is whether Green Beginnings has stated against West Bend a claim for relief that is plausible on its face. Because it is not plausible that Green Beginnings' complaint states a claim for relief, West Bend's motion to dismiss (ECF No. 13) is granted and the remainder of the motions (ECF Nos. 8, 15) are denied as moot.

**IT IS THEREFORE ORDERED** that Plaintiff Green Beginning's joint motion to consolidate (ECF No. 8) is **denied as moot.**

**IT IS FURTHER ORDERED** that Defendant West Bend's motion to strike class allegations in plaintiff's complaint (ECF No. 15) is **denied as moot**.

**IT IS FURTHER ORDERED** that Defendant West Bend's motion to dismiss (ECF No. 13) is **granted.** This case is **dismissed.** The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 28th day of May, 2021.

WILLIAM E. DUFFIN
U.S. Magistrate Judge